[No. 59713-8.   En Banc.   March 10, 1994.]

THE STATE OF WASHINGTON, *on the Relation of Robert B. Royal, Appellant*, v. THE BOARD OF YAKIMA COUNTY COMMISSIONERS, ET AL, *Respondents.*

*Russell J. Mazzola and Putney Mazzola, P.S.,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Ronald S. Zirkle, Deputy,* for respondents.

SMITH, J. — Appellant Robert B. Royal appeals direct to this court from an order of the Yakima County Superior Court denying his writ of mandamus and declaratory relief against the Board of Yakima County Commissioners and the Yakima County Auditor for refusing to accept his declaration of candidacy for a fifth judicial position in the Yakima District Court which he claims must be created along with a sixth position under state law. We reverse the Superior Court.

## STATEMENT OF FACTS

On April 15, 1992, the Board of Yakima County Commissioners (Board) adopted resolution number 206-1992 which

purported to authorize a position for a fifth district court judge in Yakima County to take office on January 1, 1993, and to be elected in the then-pending 1992 general elections, and purported to authorize a sixth position for election in the indefinite future at the discretion of the Board.[1] On July 21, 1992, the Board adopted resolution number 406-1992 which purported to amend resolution number 206-1992 by indefinitely postponing its implementation primarily for budgetary reasons.[2]

On July 23, 1992, the Yakima County Auditor posted a notice of vacancy for the newly created fifth district judge position and solicited declarations of candidacy for the 1992 primary elections.[3] On July 31, 1992, Robert B. Royal (Appellant) attempted to timely file his declaration of candidacy for that position, but it was not accepted by the County Auditor for the sole reason that the position had been abolished.[4]

On September 10, 1992, Appellant Royal filed in the Yakima County Superior Court a complaint for declaratory judgment to declare the Board's adoption of resolution number 406-1992 (abolishing the fifth position) illegal and for a writ of mandamus to compel the Auditor to accept Appellant's declaration of candidacy for the fifth district judge position and to conduct an election for that position with Appellant's name on the ballot.[5] On the same day the Superior Court, the Honorable Robert N. Hackett, Jr., set a hearing for the Board and the Auditor to show cause why the requested relief should not be granted.[6]

---

[1]Clerk's Papers, at 17, 65.

[2]Clerk's Papers, at 19, 66.

[3]Clerk's Papers, at 68, 83.

[4]Clerk's Papers, at 67, 82; "Affidavit of Elector" signed by Robert B. Royal; Clerk's Papers, at 80-81.

[5]Clerk's Papers, at 84.

[6]Clerk's Papers, at 78.

Appellant Royal claimed that Yakima County is required by RCW 3.34.010 to have six district court judges and asked that his declaration of candidacy be accepted for the fifth position in the next election. He argued that the Board's resolution number 206-1992 (creating the fifth position) is a valid exercise of power under RCW 3.38.040[7] and an attempt to comply with the mandate of RCW 3.34.010, but that the Board's resolution number 406-1992 (abolishing the fifth position) is void as a violation of both statutes.[8]

The Board claimed that, under an amendment to RCW 3.34.010 which was vetoed by the Governor, the correct number of district judges for Yakima County should be four as of January 1, 1992, and that therefore both of its own resolutions are void under RCW 3.34.020 and RCW 3.38.040 and .030. It maintained that the correct number of judges should continue to be four until the Legislature (and not the Board) determines otherwise under RCW 3.34.020.

On October 1, 1992, after briefs were filed and a hearing held, the court denied the relief requested by Appellant Royal.[9] The court's reasoning is contained only in the verbatim report of proceedings. The court stated it was necessary to consider the language of the vetoed amendment to RCW 3.34.010[10] in order to determine the true intent of the Legislature in this case.

On October 9, 1992, Appellant Royal sought direct review of the decision of the Superior Court, requesting accelerated review because of the then-pending 1992 general elections.

---

[7]The verbatim report of proceedings of the April 15, 1992, meeting of the Board and the language of resolution 206-1992 passed that day indicate that the Board made no finding that providing for election of a fifth district court judge was in the best interests of the county as a whole as required under RCW 3.38.040 and .030. See Clerk's Papers, at 30-34, 65.

[8]Neither the verbatim record of proceedings of the July 21, 1992, meeting of the Board nor the language of its resolution number 406-1992 adopted that day establish that the Board's procedures complied with RCW 3.38.040 and .030. See Clerk's Papers, at 35, 38-39, 66.

[9]Clerk's Papers, at 3.

[10]Verbatim Report of Proceedings, at 34-39; Excerpts of Proceedings, at 3-8.

Accelerated review was denied and the 1992 elections were held without listing a fifth district judge position. All parties concede that the original reason for this lawsuit may be moot because the 1992 election has already been held, but nevertheless seek review under RAP 4.2(a)(4) because they claim the case involves an issue of "broad public import which requires prompt and ultimate determination." We granted review on July 7, 1993.

## QUESTION PRESENTED

The sole question presented by this case is whether under RCW 3.34, providing for district judges, Yakima County is required to have four district court judges or six district court judges.

## DISCUSSION

Article 4, section 10 of the Washington Constitution provides in relevant part that "the legislature shall determine the number of justices of the peace to be elected . . . ." RCW 3.30.015 provides that the term "justices of the peace" shall be construed as meaning "district judges".

Under RCW 3.34.010, Yakima County has been entitled to six district court judges since 1965.[11] However, for many years the County has had only four district court judges. That number was derived from a formula established under former RCW 3.34.020 based upon district population. Under RCW 3.38.050, Yakima County has the option to remain one district court district or to create separate district court districts according to certain criteria.[12] Yakima County chose to remain a single district.

---

[11] Laws of 1965, 1st Ex. Sess., ch. 110, § 5.

[12] RCW 3.38.050, originally enacted by Laws of 1961, ch. 299, § 29 and slightly amended by Laws of 1984, ch. 258, § 28, provides in relevant part:

"District court districts shall be established in accordance with the following standards:

". . . .

"(2) The whole county may constitute one district.

"(3) There shall not be more districts than there are judges authorized for the county."

There has not previously been a challenge to the discrepancy in the number of judges between the six designated in RCW 3.34.010[13] and the four calculated by applying the population formula under former RCW 3.34.020.[14] Under that formula, the legislative authority of the county was given discretion to make final determination on the number of district judges in the county and whether they would be full or part time.[15]

The current version of RCW 3.34.010 (Laws of 1991, ch. 354, § 1) states in relevant part:

> The number of district judges to be elected in each county *shall be*: . . . Yakima, six: PROVIDED, That *this number may*

---

[13]RCW 3.34.010 has undergone several revisions since first enacted by Laws of 1961, ch. 299, § 10. In 1961, the Legislature provided seven district judges for Yakima County. Under Laws of 1965, 1st Ex. Sess., ch. 110, § 5, that number was reduced to six and has remained six through several other revisions.

[14]RCW 3.34.020 has also undergone several revisions since it was enacted by Laws of 1961, ch. 299, § 11. From 1961 until 1991 the statute provided a population formula with several revisions; most of the text of Laws of 1987, ch. 202, § 112 is provided in footnote 15. Under Laws of 1991, ch. 313, § 2, the population formula was abandoned and the current version adopted.

[15]Former RCW 3.34.020 (Laws of 1987, ch. 202, § 112) provided in relevant part:

In each district having a population of forty thousand or more but less than sixty thousand, there shall be elected one full time district judge; . . . in each district having a population of one hundred twenty-five thousand but less than two hundred thousand, there shall be elected three full time judges; . . . . If a district having one or more full time judges should change in population, for reasons other than change in district boundaries, sufficiently to require a change in the number of judges previously authorized to it, *the change shall be made by the county legislative authority without regard to RCW 3.34.010 as now or hereafter amended . . . . The county legislative authority may by resolution make a part-time position a full-time office. The county legislative authority may by resolution provide for the election of one full time judge in addition to the number of full time judges authorized.*

(Italics ours.)

*But see Pacific Cy. v. State*, 84 Wn.2d 681, 529 P.2d 460 (1974), providing that Pacific County, which was entitled to three judges under former RCW 3.34.010 (Laws of 1989, ch. 227, § 6), and which had three part-time judges, could not provide for the election of a full-time judge under the last sentence of former RCW 3.34.020 (Laws of 1973, 1st Ex. Sess., ch. 14, § 2 (last sentence substantially identical to that quoted in this footnote)) because of its small population of only 16,000.

*be increased* in accordance with a resolution of the county commissioners under RCW 3.34.020.

(Italics ours.)

The current version of RCW 3.34.020 (Laws of 1991, ch. 313, § 2) states in relevant part:

(1) *Any change* in the number of full and part-time district judges *after January 1, 1992*, shall be determined by the legislature after receiving a recommendation from the supreme court. . . .

. . . .

(4) If the legislature approves an *increase in the base number of district judges in any county as of January 1, 1992*, such *increase in the base number* of district judges and all related costs may be paid for by the county from moneys provided under RCW 82.14.310 [county criminal justice assistance amount]

. . . .

(5)(a) A county legislative authority that desires to change the number of full or part-time district judges from the *base number on January 1, 1992*, must first request the assistance of the supreme court. The administrator for the courts, under the supervision of the supreme court, shall conduct a weighted caseload analysis and make a recommendation of its findings to the legislature for its consideration as provided in this section.

(b) *The legislative authority of any county may change a part-time district judge position into a full-time position.*

(Italics ours.)

The remainder of subsections (1) and (4) and subsections (2) and (3) of RCW 3.34.020 provide the procedures for making changes, factors for implementing the weighted caseload analysis, the councils and associations to be consulted, the requirement of a detailed state and local cost report, and a designation of the source of funding.

The controversy in this case arises primarily because in 1991 the Legislature made a change in the statutory language governing the number of district court judges in the state. This is the first case before this court questioning the meaning of the statutory language in RCW 3.34.010.

### Ambiguous Statutory Language

█ "In construing a statute, the court's paramount duty is to ascertain and give expression to the intent of the Legis-

458

lature."[16] "To determine the intent of the Legislature, the court 'must look first to the language of the statute.' "[17] " 'Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself.' "[18]

The language of current RCW 3.34.010 and .020 suggests they are incongruous and somewhat contradictory. On the one hand, RCW 3.34.010 provides that there *shall be six district judges* for Yakima County and that the county legislative authority *may* by resolution *increase that number.* On the other hand, RCW 3.34.020 provides that *any change* in the number of judges after January 1, 1992, *shall be determined* by the Legislature.

■ Appellant Royal argues that the Board must immediately carry out the mandate of the Legislature under RCW 3.34.010 and provide for six district judges in Yakima County. He cites several cases for the proposition that use of the word "shall" creates a mandate, while use of the word "may" creates discretion in the official specified in the statute.[19] He is correct.[20] However, as the Board also correctly points out, the word "shall" has been interpreted as directory, rather than mandatory, when the intent of the Legislature would be frustrated by a literal reading.[21] The

[16]*Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 348, 705 P.2d 776 (1985); *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 445, 536 P.2d 157 (1975).

[17]*Service Employees International,* at 348; *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984).

[18]*Service Employees International,* at 348 (quoting *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982)).

[19]He cites *State v. Bartholomew,* 104 Wn.2d 844, 710 P.2d 196 (1985); *State v. Q.D.,* 102 Wn.2d 19, 685 P.2d 557 (1984); *United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355, 687 P.2d 186 (1984); *Issel v. State,* 39 Wn. App. 485, 694 P.2d 34 (1985).

[20]*See Spokane Cy. Health Dist. v. Brockett,* 120 Wn.2d 140, 149, 839 P.2d 324 (1992); *State ex rel. Nugent v. Lewis,* 93 Wn.2d 80, 82, 605 P.2d 1265 (1980).

[21]*See Spokane Cy. ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 97 P.2d 628 (1940); *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 465, 553 P.2d 1316 (1976) *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 377-78, 561 P.2d 195 (1977); *State v. Bryan,* 93 Wn.2d 177, 183-84, 606 P.2d 1228 (1980); *Niichel v. Lancaster,* 97 Wn.2d 620, 625-28, 647 P.2d 1021 (1982).

Board argues that RCW 3.34.010 should be interpreted as stating a permissive maximum number, while the procedures outlined in RCW 3.34.020 should be interpreted as mandatory. Consequently, it claims it is without power to accommodate Appellant Royal and that only the Legislature has that power.

A further incongruity in the statutes is that there are references to a "*base number* of district judges" without a clear definition of that term.[22] One possible interpretation of the term "base number" is the number of judges designated in RCW 3.34.010 — in this case six. Another possible interpretation of the term is the number of judges actually in existence on January 1, 1992, as arguably referred to in RCW 3.34.020(4) and (5)(a) — in this case four.

█ "[A]n ambiguity will be deemed to exist if the statute is subject to more than one reasonable interpretation; . . . if a statute is subject to interpretation, it will be construed in the manner that best fulfills the legislative purpose and intent . . . ."[23]

## Harmonizing Statutes

█ "In analyzing the wording, the court must read the statute as a whole; 'intent is not to be determined by a single sentence'."[24] "The act must be construed as a whole, and effect should be given to all the language used. Also, all of the provisions of the act must be considered in their relation to each other, and, if possible, harmonized to insure proper construction of each provision."[25] "[I]t is the duty of

---

[22](Italics ours.)

[23]*In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993); *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992); *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 184-85, 829 P.2d 1061 (1992).

[24]*Service Employees International*, at 348-49 (quoting *Human Rights Comm'n*, at 121).

[25]*Tommy P. v. Board of Cy. Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982); *Burlington Northern, Inc. v. Johnston*, 89 Wn.2d 321, 572 P.2d 1085 (1977).

the court to reconcile apparently conflicting statutes and to give effect to each of them, if this can be achieved without distortion of the language used."[26]

Yakima County is arguably in violation of the mandate in RCW 3.34.010 as interpreted in *Pacific Cy. v. State*.[27] The correct procedure must be established for increasing the present number of four district judges in Yakima County to six. RCW 3.34.010 refers to a procedure only for *increasing* the number *beyond* six. RCW 3.38.030 and .040 delegate the duty to amend the districting plan to the Yakima County Board of Commissioners through the Yakima County district court districting committee,[28] provided there is a public hearing and the districting plan "conforms to the standards set forth in chapters 3.30 through 3.74 RCW and is conducive to the best interests and welfare of the county as a whole . . . ."[29]

■ If the Board of Yakima County Commissioners may change the number of judges to comply with the mandate for six judges under RCW 3.34.010, then the language in RCW 3.34.020(1) stating that after January 1, 1992, *any change shall be* made by the Legislature must be interpreted in a manner that will still give the statute proper effect.[30] "It must be presumed that the legislature intends to

---

[26]*Tommy P.*, at 391-92; *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86 (1975).

[27]84 Wn.2d 681, 529 P.2d 460 (1974). While directly interpreting the interplay between former RCW 3.34.040, .010 and .020, the court did not disapprove of Pacific County's interpretation of section .010 which mandated three judges for the county. Although the county was not sufficiently populated to be entitled even to one full-time judge, this court determined the county could properly have three part-time judges.

[28]RCW 3.38.010 provides that membership of the district court districting committee includes the prosecuting attorney, a superior court judge, mayors or representatives of cities in the county, a member of the largest local bar association or an attorney selected by the board of commissioners, the county auditor, and the chairperson of the board of commissioners. RCW 3.38.020 provides that the committee meet and prepare a districting plan "in accordance with the provisions of chapters 3.30 through 3.74 RCW". The plan should include, among other things, "the number of judges to be elected in each district".

[29]RCW 3.38.030.

[30]*See Tommy P.*, at 391-92.

enact effective laws."[31] It follows that the Legislature may rely on the proper and timely execution of those laws. It can thus be concluded that the Legislature enacted the language in RCW 3.34.020(1) on the assumption that the number of district judge positions mandated for many years under RCW 3.34.010 was identical to the number of district judges actually serving on January 1, 1992. In that event, the mandate and the procedure established in RCW 3.34.020 would apply to any changes which *increase* the number mandated in RCW 3.34.010.[32]

RCW 3.34.010 mandates six district judges for Yakima County, but there are presently only four judges. The procedures under RCW 3.34.020 and .025 would not apply to those positions created after January 1, 1992, in an attempt to comply with RCW 3.34.010. Changes made in this manner must follow the procedures under RCW Chapter 3.38. Any positions which would increase the number of district judges beyond the number mandated in RCW 3.34.010 can be created only by following the procedures under RCW 3.34.020. This interpretation harmonizes and gives effect to all the provisions of RCW 3.34.[33]

### Unlikely, Absurd or Strained Result

The Board argues that the changes to RCW 3.34.010 and .020 enacted in 1991 were intended to change the procedure by which the number of district judges in the state is determined after January 1, 1992, and that the Legislature intended to make those determinations mandated by article 4, section 10 of our state constitution rather than delegate

---

[31]*State v. Bryan*, 93 Wn.2d 177, 183, 606 P.2d 1228 (1980); *Spokane Cy. Health Dist. v. Brockett*, 120 Wn.2d 140, 154, 839 P.2d 324 (1992).

[32]By its language RCW 3.34.025 applies only to positions created under RCW 3.34.020. It may not therefore apply to positions created solely under authority of RCW 3.34.010. *See* RCW 3.34.025.

[33]*See Tommy P.*, at 391-92; *Burlington Northern, Inc. v. Johnston, supra; State v. Fagalde, supra.* According to a recent official report, Yakima County may in fact be in great need of five and six full-time district judge positions. *See* Office of Administrator for the Courts, *1991 Report of the Courts of Washington* 10, 29.

the decision to counties. The Board further argues that harmonizing the two inconsistent sections completely undermines the basic objective of the Legislature by allowing certain judicial positions to be created after January 1, 1992, by county legislative authorities instead of the Legislature and to be created without following procedures under RCW 3.34.020. The Board contends that the amendment to RCW 3.34.010 vetoed by the Governor should be used to determine the true intent of the Legislature. This court has considered similar arguments in the past:

> This court has the ultimate authority to determine the meaning and purpose of a statute. *Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990). Our paramount duty in statutory interpretation is to give effect to the Legislature's intent. *WPPSS v. General Elec. Co.*, 113 Wn.2d 288, 292, 778 P.2d 1047 (1989). We avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). "The spirit or purpose of an enactment should prevail over the express but inept wording." *State v. Day*, 96 Wn.2d 646, 648, 638 P.2d 546 (1981).[34]

"[A] statute which is clear on its face is not subject to judicial interpretation; . . . an ambiguity will be deemed to exist if the statute is subject to more than one reasonable interpretation; . . . if a statute is subject to interpretation, it will be construed in the manner that best fulfills the legislative purpose and intent; and . . . in determining the legislative purpose and intent the court may look beyond the language of the Act to legislative history."[35]

▌ The Governor, in vetoing bills passed by the Legislature, acts in a legislative capacity and as part of the legislative branch of state government. In determining the intent

---

[34]*State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

[35]*In re Marriage of Kovacs, supra* at 804 (citing *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992); *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 184-85, 829 P.2d 1061 (1992)). *See also Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 48, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990).

of the Legislature, we must also determine the intent of the Governor in vetoing particular legislation.[36]

At the time the current versions of RCW 3.34.010, .020 and .025[37] were signed into law by the Governor, there were two different amendments to RCW 3.34.010, each of which had been passed by both the House and the Senate.[38] The Governor vetoed one of those amendments.[39] The Board of Yakima County Commissioners relies on the vetoed amendment to RCW 3.34.010 to argue that the correct number of judges for Yakima County is four as of January 1, 1992. That vetoed amendment (Engrossed Substitute House Bill 1881, vetoed with message from the Governor) provided in relevant part:

> The number of district judges . . . in each county shall be the *base number* of full and part-time district judges that are in office as of January 1, 1992, and may only be changed thereafter as provided in RCW 3.34.020 and section 3 of this act.[40]

(Italics ours.) Laws of 1991, ch. 313, § 1.

The current version of RCW 3.34.010 made few changes to the prior version. It gave King County two additional judges, for a total of 26; it took one judge away from Pacific County, leaving a total of 2; it gave Pierce County three

---

[36]*Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944); *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 104 P.2d 478 (1940). *See also Spokane Cy. Health Dist. v. Brockett*, 120 Wn.2d 140, 154, 839 P.2d 324 (1992).

[37]Laws of 1991, ch. 354, § 1 (House Bill 1467) and Laws of 1991, ch. 313, §§ 2, 3 (Engrossed Substitute House Bill 1881) respectively.

[38]Laws of 1991, ch. 354, § 1 (House Bill 1467) and Laws of 1991, ch. 313, § 1 (Engrossed Substitute House Bill 1881).

[39]Laws of 1991, ch. 313, § 1 (Engrossed Substitute House Bill 1881).

[40]Laws of 1991, ch. 313, § 3 is now codified as RCW 3.34.025, which requires that for "[a]ny additional . . . positions created under RCW 3.34.020 . . . the [county] legislative authority . . . documents its approval . . . and its agreement that it will pay out of county funds, without reimbursement from the state, the expenses of such additional judicial positions . . . ." It also provides that the county legislative authority has discretion to "phase in" any such positions over a period of 2 years from the effective date of their creation.

additional judges, for a total of 11; and it gave Spokane County one additional judge, for a total of 9.[41]

The note at the end of Laws of 1991, ch. 313 containing the Governor's explanation of the veto of section 1 of Engrossed Substitute House Bill 1881 states, in its entirety:

"I am returning herewith, without my approval as to section 1, Engrossed Substitute House Bill No. 1881 entitled:

"AN ACT Relating to determining the number of district court judges."

This bill authorizes the use of the weighted caseload analysis as the basis for determining the number of full and part-time district court judges.

RCW 3.34.010 is amended in both section 1 of Engrossed Substitute House Bill No. 1881 and section 1 of House Bill No. 1467 which adds additional district court judges. If both of these sections became law, they would be in conflict. This would create confusion in the implementation of the weighted caseload method as well as jeopardizing the new district court judge positions.

I am assured that the enactment of section 1 of Engrossed Substitute House Bill No. 1881 is not necessary in order to facilitate the weighted caseload method. To insure that this new program can be implemented without legal confusion, I have vetoed section 1 of Engrossed Substitute House Bill No. 1881.

With the exception of section 1, Engrossed Substitute House Bill 1881 is approved."

The language of the vetoed section would have supported the Board's claim that the *base number* is the number of district judges in existence on January 1, 1992. If the section had not been vetoed, the basic thrust of Engrossed Substitute House Bill 1881 would have been to establish the weighted caseload method with approval by the Legislature as the only means of creating new district judge positions in the state. If the vetoed section had been enacted, *base number* would mean the number of district judges in Yakima County should be four as it was on January 1, 1992, and as it is at present. The fact is that the section was vetoed and it therefore was not enacted as part of the current version of RCW 3.34.010.

[41]*See* Laws of 1991, ch. 354, § 1 (House Bill 1467).

The Board claims the number six in RCW 3.34.010 merely establishes a permissive maximum. That interpretation would make the section superfluous because in all cases where any judicial position is requested, under RCW 3.34.020 a weighted caseload analysis and the Legislature's approval would be required in order to reach or exceed the number designated in RCW 3.34.010. Such an interpretation would result in replacing the current enacted version of RCW 3.34.010 with the vetoed version which obviously does not exist.[42]

This court is reluctant to add language omitted from a statute, and then only when the whole purpose of an act would be undermined by a literal reading of its remaining language.[43] In this case, to the contrary, the current versions of RCW 3.34.010 and .020 can be harmonized without jeopardizing the goals of RCW 3.34. The Board of Yakima County Commissioners has not articulated a sufficiently unique reason why this court should insert vetoed language into and delete enacted language from a functional statute.

SUMMARY AND CONCLUSIONS

Under rules of statutory construction, where an ambiguity exists, the court must attempt to harmonize or reconcile the language of a statute in order to give effect to all its provisions. The court may look to legislative history, including vetoed language, to find the correct interpretation of the statute only after determining it is impossible to give effect to the legislative intent by harmonizing existing statutory provisions.

In this case, the language of the statutes can be reconciled to give effect to all their provisions and to the intent of

---

[42]The status of the additional district court judge positions created in King, Pierce and Spokane Counties under the current version of RCW 3.34.010 would also be in question. Without specific authorization under that statute, the positions would have to be created pursuant to RCW 3.34.020. It is clear that they were not.

[43]See State v. Taylor, 97 Wn.2d 724, 649 P.2d 633 (1982) (providing a detailed history of our decisions relating to omitted statutory language).

the Legislature. Adding a vetoed provision is unnecessary for that purpose.

Reconciling the apparently conflicting statutes in this case leads to our conclusion that the Board of Yakima County Commissioners must comply with the mandate of RCW 3.34.010 and provide for election of two additional district court judges, for a total of six, in Yakima County in accord with procedures under RCW 3.38. These positions are already authorized by RCW 3.34.010 and thus are not subject to the procedures under RCW 3.34.020 and .025. According to the 1991 weighted caseload analysis of state courts by the Office of the Administrator for the Courts, Yakima County is in need of two full-time district court judges in addition to the four currently in office in that county. However, only if the Board requests a seventh judge or makes any subsequent request for a change in the number of district court judges more or less than the six designated in RCW 3.34.010, based upon an increase or decrease in the county population, would that request be subject to the provisions of RCW 3.34.020, which requires a weighted caseload analysis by the Office of the Administrator for the Courts under supervision of the Supreme Court and approval by the Legislature.

We reverse the trial court in its denial of declaratory judgment in favor of Appellant Robert B. Royal and its denial of a writ of mandamus ordering the Board of Yakima County Commissioners and the Yakima County Auditor to provide positions on the ballot for election of a fifth and a sixth district court judge in Yakima County under RCW 3.34.010, in accord with procedures established under RCW 3.38.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.