215 P.3d 194 (2009)
CITY OF SEATTLE, Respondent,
v.
Robert ST. JOHN, Petitioner.
No. 81992-1.
Supreme Court of Washington, En Banc.
Argued May 19, 2009.
Decided September 10, 2009.
*196 Ryan Boyd Robertson, Attorney at Law, Burien, WA, for Petitioner.
Rebecca C. Robertson, Seattle City Attorney's Office, Seattle, WA, for Respondent.
Pamela Beth Loginsky, Washington Association of Prosecutors, Olympia, WA, Amicus Curiae on behalf of Washington Association of Prosecuting Attorneys.
Shelley Anne Williams, Shannon Elizabeth Inglis, Attorney General's Office, Seattle, WA, James Kendrick Pharris, Attorney General's Office, Olympia, WA, Amicus Curiae on behalf of Washington State Patrol.
OWENS, J.
¶ 1 Robert St. John crashed his motorcycle and when the responding police officer asked him to take a voluntary blood alcohol test, he refused. The officer then obtained a warrant for a blood alcohol test. St. John challenges that test, asserting that once a driver has declined a voluntary test, obtaining a test pursuant to a warrant violates (1) Washington's implied consent statute, (2) due process, and (3) equitable estoppel. We disagree. The statute's plain language states that it does not preclude an officer from obtaining a search warrant for a blood alcohol test, and neither due process nor equitable estoppel requires officers to inform drivers of this possibility.

FACTS
¶ 2 St. John was seriously injured in an accident while driving a motorcycle. One of the two emergency workers responding to the scene reported smelling an odor of alcohol, but the other did not. Officer Eric Michl responded to the scene and observed some signs of intoxication, including slurred speech, but did not smell alcohol. A friend of St. John's who arrived at the scene told Michl that St. John had one drink. At the hospital, Michl observed a faint odor of alcohol on St. John's breath. Michl arrested St. John for driving under the influence of intoxicating liquor and gave him the statutory warning regarding implied consent blood alcohol tests. St. John refused the voluntary blood alcohol test. Michl then sought a search warrant for a blood alcohol test. Seattle Municipal Court Judge Michael Hurtado found probable cause and signed a search warrant for a blood alcohol test, which the hospital then conducted.
¶ 3 The municipal court held that RCW 46.20.308(5) did not allow a blood alcohol test pursuant to a warrant after a person had declined a voluntary blood alcohol test and suppressed the results of the blood alcohol test. The superior court reversed and St. John appealed. The Court of Appeals certified the case directly to this court.

ISSUES
¶ 4 1. Does the implied consent statute allow the State to administer a blood alcohol test pursuant to a warrant after a driver has declined a voluntary blood alcohol test?
¶ 5 2. Does an implied consent warning violate due process if it does not inform drivers that an officer may seek a warrant for a blood alcohol test even if the driver declines the voluntary blood alcohol test?
¶ 6 3. Does the doctrine of equitable estoppel bar the State from seeking a warrant for a blood alcohol test after informing drivers that they may refuse the voluntary blood alcohol test?

*197 STANDARD OF REVIEW
¶ 7 We review issues of statutory meaning de novo. State v. Schultz, 146 Wash.2d 540, 544, 48 P.3d 301 (2002). We also review the constitutionality of a statute de novo. State v. Abrams, 163 Wash.2d 277, 282, 178 P.3d 1021 (2008).

ANALYSIS

I. The Implied Consent Statute
¶ 8 When interpreting a statute, our primary goal is to effectuate legislative intent. In re Custody of Shields, 157 Wash.2d 126, 140, 136 P.3d 117 (2006). Where the statute's meaning is plain and unambiguous, we derive legislative intent from the plain language of the statute. State ex rel. Royal v. Bd. of Yakima County Comm'rs, 123 Wash.2d 451, 457-58, 869 P.2d 56 (1994). If a statute's language is ambiguous, we construe the statute "`in the manner that best fulfills the legislative purpose and intent.'" Id. at 459, 869 P.2d 56 (quoting In re Marriage of Kovacs, 121 Wash.2d 795, 804, 854 P.2d 629 (1993)).
¶ 9 Under the implied consent statute, if a law enforcement officer has reasonable grounds to believe that a motor vehicle driver has been driving under the influence of intoxicating liquor or any drug (DUI), the driver may choose to undergo a blood alcohol test[1] or have his or her driver's license suspended for at least one year. RCW 46.20.308(1), 2(b). The statute states that "[n]either consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood." RCW 46.20.308(1). We hold that the legislative intent is plain on the face of the statute that an officer may obtain a blood alcohol test pursuant to a warrant regardless of the implied consent statute.
¶ 10 Despite this plain language allowing officers to obtain a search warrant for blood alcohol tests regardless of the implied consent statute, St. John contends that the implied consent statute prohibits the State from obtaining a blood alcohol test pursuant to a warrant once a driver has declined to undergo a blood alcohol test under the implied consent statute. He bases this argument on subsection (5), which states that if a person refuses the blood alcohol test requested by the officer, "no test shall be given except as authorized under subsection (3) or (4)." RCW 46.20.308(5). However, subsection (5) applies to blood alcohol tests given pursuant to the implied consent statute. RCW 46.30.308(5) ("If, following ... receipt of warnings under subsection (2) of this section, the person arrested refuses upon the request of a law enforcement officer to submit to a test ..., no test shall be given except as authorized under subsection (3) or (4) of this section" (emphasis added)). We hold that the plain language of subsection (5) prohibits only tests given pursuant to the implied consent statute after a driver has declined, and not blood alcohol tests given pursuant to a warrant. The legislature made its intention regarding blood alcohol tests pursuant to a warrant quite clear: "Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood." RCW 46.20.308(1) (emphasis added).
¶ 11 Although we hold that the implied consent statute's plain language allows the State to pursue a blood alcohol test pursuant to a warrant, we note that even if we were to find the statute ambiguous, an analysis of legislative intent would lead us to the same result. The three goals of the implied consent statute are (1) discouraging DUI, (2) removing driving privileges from those individuals disposed to DUI, and (3) providing an efficient means of gathering reliable evidence of intoxication. Dep't of Licensing v. Lax, 125 Wash.2d 818, 824, 888 P.2d 1190 (1995) (citing Nowell v. Dep't of Motor Vehicles, 83 Wash.2d 121, 124, 516 P.2d 205 (1973)). Interpreting the statute to prohibit the State from obtaining a search warrant for a blood alcohol test if the driver had previously refused a blood alcohol test would inhibit, not *198 advance, legislative intent by making it more difficult for officers to gather evidence of intoxication.
¶ 12 Further, we construe statutes to avoid absurd results. State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989). St. John proposes to interpret the implied consent lawwhich the legislature explicitly passed to address the problem of drunk driving and assure the efficient gathering of evidence against those who would drive under the influenceto somehow give drivers the right to refuse both voluntary blood alcohol tests and blood alcohol tests compelled by a warrant. Such a right would allow drivers suspected of drunk driving to hinder police investigations and the collection of evidence, an absurd result for a law intended to assist in the investigation and prosecution of drunk drivers.

II. Due Process
¶ 13 St. John contends that the State violated his right to due process by not warning him that it could seek a warrant for a blood alcohol test if he declined the voluntary blood alcohol test. His claim rests on the premise that due process required the State to warn him of all of the consequences of his refusal.[2] This argument fails because the search warrant was not a consequence of his refusal to take the voluntary test; to the contrary, the warrant and subsequent blood alcohol test were consequences of the evidence that St. John was driving under the influence. This evidencewhich included St. John's slurring his speech, a statement by St. John's friend that St. John had a drink that evening, a statement by a paramedic that she detected the odor of alcohol on St. John's breath, and the officer himself smelling alcohol on St. John's breathwas found by Judge Hurtado to constitute sufficient probable cause to justify a search warrant for a blood alcohol test of St. John. Contrary to St. John's assertion, the officer did inform St. John of the consequences of refusing the blood alcohol testa one-year suspension of his driver's license. We find no due process violation.

III. Equitable Estoppel
¶ 14 Under the principle of equitable estoppel, "`a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743, 863 P.2d 535 (1993) (quoting Wilson v. Westinghouse Elec. Corp., 85 Wash.2d 78, 81, 530 P.2d 298 (1975)). "The elements of equitable estoppel are: (1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission." Id. Assertions of equitable estoppel against the government are not favored, and parties must demonstrate that equitable estoppel is necessary to prevent a manifest injustice and that the exercise of governmental functions will not be impaired as a result of the estoppel. Id.
¶ 15 St. John contends that the State should be estopped from performing a blood alcohol test pursuant to a warrant because the officer told St. John that he had the "right" to decline the voluntary blood alcohol test without disclosing that the officer could attempt to obtain a test pursuant to a warrant. Here, the officer's statement that St. John could decline the blood alcohol test does not conflict with his obtaining a warrant for a blood alcohol test. Obtaining a blood alcohol test through the implied consent statute is a separate process from obtaining a blood alcohol test pursuant to a warrant, and the officer made no representation to St. John that *199 the State could not obtain a blood alcohol test pursuant to a lawful search warrant.

CONCLUSION
¶ 16 The implied consent statute explicitly allows a police officer to obtain a blood alcohol test pursuant to a warrant, even after a driver refuses a voluntary blood alcohol test. Neither due process nor equitable estoppel requires police officers to inform DUI suspects of the possibility of obtaining a warrant to collect evidence. We uphold the superior court's ruling to allow the blood alcohol test into evidence.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, DEBRA L. STEPHENS and TOM CHAMBERS, JJ.
SANDERS, J. (dissenting).
¶ 17 The majority holds Washington's implied consent statute, RCW 46.20.308, "does not preclude an officer from obtaining a search warrant for a blood alcohol test." Majority at 196. But subsection (5) of the statute does exactly that if the driver refuses to consent.
¶ 18 When interpreting a statute we first look to its plain language. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). "If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001). "[A] statute should, if possible, be so construed that no clause, sentence or word shall be superfluous, void, or insignificant." Groves v. Meyers, 35 Wash.2d 403, 407, 213 P.2d 483 (1950).
¶ 19 Under Washington's implied consent statute every person who operates a motor vehicle within the state of Washington is deemed to have given his consent to submit to a test or tests of his breath or blood in the event he is arrested for suspicion of driving while intoxicated. RCW 46.20.308(1). However a driver may withdraw his consent after being advised of his implied consent rights.
¶ 20 The implied consent law is triggered once there is a valid DUI arrest. State v. Avery, 103 Wash.App. 527, 534, 13 P.3d 226 (2000). In relevant part RCW 46.20.308 provides:
(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration or presence of any drug in his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503. Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood.

(2) ... The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver, in substantially the following language....
(3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.
(4) Any person who is dead, unconscious, or who is otherwise in a condition rendering him or her incapable of refusal, shall be deemed not to have withdrawn the consent provided by subsection (1) of this section....

*200 (5) If, following his or her arrest and receipt of warnings under subsection (2) of this section, the person arrested refuses upon the request of a law enforcement officer to submit to a test or tests of his or her breath or blood, no test shall be given except as authorized under subsection (3) or (4) of this section.

RCW 46.20.308 (emphasis added).
¶ 21 In 2004 the legislature added the last sentence to RCW 46.20.308(1) by amendment, which says, "Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood." Laws of 2004, ch. 68, § 2. Subsection (1) might apply to a situation, for example, where a hospital has already taken a blood sample from an individual for the purpose of treating the individual. There the police officer needs to obtain a search warrant to obtain the results of that test. But to say it authorizes a new test by warrant makes no sense where the individual consents. Moreover simply because a police officer may obtain a search warrant for a person's breath or blood in some circumstances does not mean all test results will necessarily be admissible at trial. This subsection says nothing about the admissibility of breath or blood tests.
¶ 22 However subsection (5) explicitly states that if a driver refuses to submit to a breath or blood test "no test shall be given" except under subsection (3) or (4), i.e., if the person is dead, unconscious, arrested for vehicular homicide or vehicular assault or if the accident results in serious bodily injury to another person. Neither subsection (3) nor (4) applies to Robert St. John. Therefore once St. John withdrew his consent to submit to a breath or blood test, a blood test would violate RCW 46.20.308(3) and (5). Simply put an officer cannot force a driver to submit to a blood test if the driver refuses consent.
¶ 23 Judge Judith Hightower of the Seattle Municipal Court persuasively reasoned:
The clear, unambiguous and unequivocal provisions of the statutes governing testing for driving under the influence as outlined above require[] that no test should have been given to Mr. St. John. Though the statutes authorize seeking a search warrant (RCW 46.20.308(1) and competent evidence need not be excluded (RCW 46.61.506(2), they do not mandate that the evidence should be admitted into evidence at trial....
If this were an incident where law enforcement was or became aware of another test sought by Mr. St. John, or where the blood was drawn by the hospital for medical treatment and not at the direction of the police, the search warrant evidence might then be admissible as circumstantial evidence of driving under the influence under RCW 46.20.308(1). If there was a test such as urine or breath test, for example, that met the scientific requirements for admissibility that came into the hands of the prosecution, that then may be admissible as circumstantial evidence of the crime under RCW 46.61.506(2).
Under the facts presented in this case, the intent of the legislature is to revoke Mr. St. John's privilege to drive for the refusal and use the refusal against him at trial, not to authorize additional evidence gathering after the refusal.
Clerk's Papers at 39.
¶ 24 Additionally, the officer violated subsection (3) of the statute because a blood test was administered. Under subsection (3) a blood test may be administered only if the person is unconscious, under arrest for vehicular homicide or vehicular assault, or under arrest for driving under the influence, which resulted in an accident and serious bodily injury to another person. Even though St. John was under arrest for driving under the influence, his accident did not lead to the serious bodily injury of another person, so the only test that could have possibly been administered to St. John could have been a breath test.
¶ 25 The majority essentially construes subsection (1) inconsistently with subsections (3) and (5) in the statute to hold "an officer may obtain a blood alcohol test pursuant to a warrant regardless of the implied consent statute." Majority at 197. This violates the canon of construction that all provisions should be harmonized if possible. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 *201 (2003). Obtaining a blood sample from St. John by search warrant plainly violated the express prohibition of RCW 46.20.308(5) since St. John withdrew his consent and no exception under the statute applied. If we accept the majority's reasoning, a driver's refusal to consent under subsection (5) would be meaningless.
¶ 26 I dissent.
I CONCUR: JAMES M. JOHNSON, J.
NOTES
[1] The implied consent statute provides for either a breath or blood alcohol test, depending on the circumstances. RCW 46.20.308(3). For simplicity, we use the term "blood alcohol test" throughout this opinion to refer to any test of blood or breath for the purpose of determining the alcohol concentration or presence of any drug in the blood or breath of a driver.
[2] Because we find that the search warrant was not a consequence of St. John's refusal to take the voluntary test, we do not address his contention that the State is required to warn him of all conceivable consequences of refusal to take the test. We note, however, that the United States Supreme Court has held that the State is not required to inform drivers that their refusal to take a voluntary blood alcohol test may be used as evidence of their guilt at trial. South Dakota v. Neville, 459 U.S. 553, 564-66, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).