[No. 43494-2-I.    Division One.    March 20, 2000.]

*In the Matter of the Detention of* LOUIS BROCK,
*Appellant.*

*James Robert Dixon*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

Cox, J. — Louis Brock is committed to total confinement at the Special Commitment Center (SCC) in Monroe, Washington under the sexually violent predator statute. We must decide whether a treatment plan he proposed meets the statutory definition of "less restrictive alternative," which is defined as "court-ordered treatment in a setting less restrictive than total confinement."[1] Brock's proposed plan calls for his treatment provider to treat him at the SCC on a weekly basis for no less than 24 months. Subject to satisfactory progress for the initial period of treatment, Brock would be allowed escorted field trips. But he would still be confined at the SCC. Placement in a secure residential housing outside the SCC would follow, subject to Brock's satisfactory progress through prior stages of treatment. Because the plain words of the statute show that Brock's plan does not qualify as a "less restrictive alternative," we affirm.

Between 1969 and 1984, Louis Brock raped or attempted to rape five different women. In 1991, as Brock neared completion of his sentence for convictions on those charges,

[1]RCW 71.09.020(7).

the State commenced an action seeking to commit him under the sexually violent predator statute. A jury found that he was a sexually violent predator, and the court committed him to the SCC at Monroe for treatment. In a prior appeal, this court affirmed the commitment order. But we remanded the case for consideration of less restrictive alternatives to confinement.

At the hearing on remand, the State moved for the court to rule, as a matter of law, that Brock's proposed treatment plan does not meet the statutory definition and requirements of a less restrictive alternative (LRA). The trial court granted the motion. The parties then agreed to proceed to trial on a stipulated record consisting of three psychiatric reports. On the basis of these reports, the trial court concluded that there was no LRA to total confinement for Brock.

Brock appeals.

## Less Restrictive Alternative

Brock argues that the trial court erroneously concluded that his proposed treatment plan did not constitute a LRA under RCW 71.09.020(7). We hold, as a matter of law, that Brock's proposed plan fails to meet the statutory definition of "treatment in a setting less restrictive than total confinement."

A statute that is plain on its face is not subject to construction.[2] All of the language used in the statute must be given effect, with no portion rendered meaningless or superfluous.[3] We avoid interpretations that are forced, unlikely, or strained.[4] The construction of a statute is a question of law that we review de novo.[5]

Noting that the term "less restrictive than total confine-

---

[2]*In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

[3]*In re Detention of Petersen*, 138 Wn.2d 70, 92, 980 P.2d 1204 (1999).

[4]*State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

[5]*State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999).

ment" in RCW 71.09.020(7) is not defined, and relying on a dictionary definition of "restrictive," Brock argues that a "less restrictive treatment plan" is one less likely to inhibit treatment. He further argues that the treatment conditions at the SCC are such that his proposed treatment plan meets the statutory definition. But these arguments miss the mark because they ignore the plain words of the statute. Accordingly, we must reject them.[6]

█ RCW 71.09.020(7) defines "less restrictive alternative" as "court-ordered treatment in a setting less restrictive than total confinement." And RCW 71.09.060(1) states that treatment in total confinement must be conducted in a secure facility operated by the department of social and health services.[7] A plain reading of these provisions shows that court-ordered treatment must be in a *setting* other than total confinement at a secure facility to meet the definition of a LRA. For purposes of the statutory definition, it is irrelevant that the treatment itself may be less restrictive than what is provided at the secure facility. Rather, it is the *setting* that must be less restrictive than total confinement.

The legislative history of the statutory provisions now before us buttresses our plain reading of the statute. In 1995, the legislature added to chapter 71.09 the definition of "less restrictive alternative."[8] Apparently, the amend-

---

[6]*See State v. Leek*, 26 Wn. App. 651, 655-56, 614 P.2d 209 (1980) (plain statutory definitions of terms used therein control as to the intent of Legislature and any meaning which is not stated is excluded) (citing 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47.07 (5th ed. 1992); *State v. Green*, 91 Wn.2d 431, 441, 588 P.2d 1370 (1979) (when statutory language is plain, the meaning must be derived from the wording itself, and there is no room for judicial interpretation).

[7]RCW 71.09.060(1) states, in relevant part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the department of social and health services for placement in a secure facility operated by the department of social and health services for control, care, and treatment . . . ."

[8]LAWS OF 1995, ch. 216, § 1.

ment was in response to *In re Personal Restraint of Young*.[9] There, our Supreme Court held that RCW 71.09 as it then existed, violated the constitutional right to equal protection because it did not require consideration of less restrictive alternatives to total confinement for treatment of persons committed under that statute.[10] In so holding, the court referred to the statute governing the commitment of the mentally ill, RCW 71.05, which requires consideration of "treatment in a less restrictive setting than detention."[11] The court then stated that the same consideration of alternatives must also apply to sexually violent predators.[12]

Tracking the meaning of LRA in RCW 71.05, a less restrictive alternative here must mean treatment in a setting other than total confinement at the SCC. Brock's plan clearly does not meet the statutory definition. It calls for his treatment in total confinement at SCC for at least two years. Thereafter, and subject to satisfactory progress in treatment, he would remain confined at the SCC but would be allowed to take supervised visits outside the facility. The trial court properly concluded that Brock's treatment plan did not meet the statutory definition of a LRA.

We affirm.

The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[13]

BAKER and APPELWICK, JJ., concur.

Review denied at 141 Wn.2d 1025 (2000).

---

[9]122 Wn.2d 1, 857 P.2d 989 (1993).

[10]*In re Young*, 122 Wn.2d at 47.

[11]RCW 71.05.240 states in relevant part: "[I]f the court finds that such person, as the result of a mental disorder, presents a likelihood of serious harm, or is gravely disabled, but that treatment in a *less restrictive setting* than detention is in the best interest of such person or others, the court shall order an appropriate less restrictive course of treatment for not to exceed ninety days." (Emphasis added.); RCW 71.05.320 states in relevant part: "If the court or jury finds that grounds [for confinement] have been proven, but finds that treatment less restrictive than detention will be in the best interest of the person or others . . . ."

[12]*In re Young*, 122 Wn.2d at 47.

[13]RCW 2.06.040.